FILED
at\_\_\_\_O'clock &\_\_\_\_ min.\_\_\_\_M
JAN 1 7 2013
United States Bankruptcy Court
Columbia, South Carolina (42)

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 12-05965-JW |
| David Thomas McClure, | Chapter 13 |
| Debtor(s). | **ORDER** |

This matter is before the Court for a confirmation hearing on the plan filed by David Thomas McClure ("Debtor"). The Chapter 13 Trustee filed an objection to confirmation on the grounds that the plan appears not have been proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3). Cathy McClure, a creditor of Debtor, also objected on the grounds that the plan was not proposed in good faith. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014, the Court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1. Debtor has been employed by Southern Fastening Systems ("Southern") for approximately two years. As a benefit of employment, Southern provides Debtor with a company vehicle, which Debtor is permitted to use personally but he must maintain and submit to Southern records of his personal mileage and gas.

2. On July 13, 2012, Debtor purchased a diamond engagement ring for his fiancé. Debtor financed this purchase with a loan in the amount of $10,245.21 from Sterling Jewelers Inc. d/b/a Jared Galleria of Jewelry ("Sterling"). On August 11, 2012, Debtor made a payment to Sterling in the amount of $2,050.00.

3. According to Debtor's Schedules and Statement of Financial Affairs, Debtor retained his bankruptcy counsel sometime in August of 2012.

4. On August 14, 2012, Debtor purchased a 2010 Chevrolet Camaro for personal use, which was financed by a loan in the amount of $31,325.00 plus 4.75 % interest from State Employees Credit Union. No payments were made on the loan prior to the filing of the bankruptcy case. Debtor testified that he needed the additional vehicle in case he ever left his employment with Southern.

5. On August 19, 2012, Debtor took a credit counseling course in preparation for filing this bankruptcy case.

6. Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on September 26, 2012.

7. Debtor did not list any tools as assets in his Schedules and Statements. At the confirmation hearing, Debtor presented a list of eight (8) tools he personally owned, which he had failed to list in his Schedules. According to the list prepared by Debtor, the tools have a combined value of $535.00.

8. Debtor's Schedule D indicates that he has $57,624.75 of unsecured nonpriority debt, $53,905.65 of which is credit card debt.

9. On September 26, 2012, Debtor filed his chapter 13 plan ("Plan"). In the Plan, Debtor proposes to retain and make payments on the engagement ring and the Camaro.

10. At the confirmation hearing on December 18, 2012, Debtor testified that, as part of his employment, he receives and stores a volume of new power tools, which are loaned to his customers in connection with their purchase of fasteners from Southern. At the time of the filing of the petition, these power tools were stored in a shed at 367 Limehouse Court, Rock Hill, South Carolina, which is co-owned by Debtor and Cathy

McClure. Debtor testified that these tools were either delivered to customers or returned to Southern, and that he no longer has possession of the tools. He testified that he did not have personal records of the delivery or return of these tools but believed that Southern may have records.

11.  At the conclusion of the confirmation hearing, Debtor offered to surrender the Camaro.

12.  The Trustee argues that the Plan fails to meet the requirements of § 1325 because it was not proposed in good faith. Specifically, the Trustee argues that Debtor's failure to disclose any tools in his Schedules and his purchase of the Camaro and diamond engagement ring shortly before filing bankruptcy is evidence of a lack of good faith.[1] Debtor argued that his failure to disclose the personal tools was an oversight and argued that he needed to purchase a vehicle because he would be without a personal vehicle if his employment with Southern ended.

## CONCLUSIONS OF LAW

Debtor bears the burden of proving that his plan satisfies the requirements of 11 U.S.C. § 1325(a), including the requirement that the plan is proposed in good faith. In re Namie, C/A No. 08-02192, slip op. (Bankr. D.S.C. Aug. 5, 2008). To determine whether a plan has been proposed in good faith, this Court examines the totality of the circumstances to determine whether there has been an abuse of the provisions, purpose, or spirit of Chapter 13 in the proposal of the plan. Id. (citing Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986)). A non-exclusive list of the factors to be used to make this

---

[1] Initially, the Trustee appeared to focus on Debtor's failure to disclose the volume of new tools in the shed located on his real property as the grounds for a finding of bad faith; however, following Debtor's testimony that the tools belonged to his employer, the Trustee refocused his argument upon the Debtor's failure to disclose his personal tools (with a total value of $535) and the prepetition purchase of the Camaro and diamond engagement ring.

determination was provided by the Fourth Circuit in Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982).[2] In addition, the Fourth Circuit added the debtor's pre-petition conduct as a relevant factor to consider in connection with a good faith analysis in Neufield v. Freeman, 794 F.2d 149 (4th Cir. 1986). Considering all of the Deans factors and Debtor's prepetition conduct, the Court finds that the factors support a conclusion that the plan was not proposed in good faith. In particular, Debtor's pre-petition conduct, nature and amount of unsecured claims, and honesty in disclosing the facts of his case indicate his lack of good faith in proposing his plan in this case.

Six weeks prior to filing bankruptcy, Debtor purchased a $31,325.00 Camaro, despite having a company vehicle that he was allowed to use for his personal use. Debtor argued that he needed the Camaro in the event that his employment ended with Southern. However, no testimony or evidence was presented indicating that the termination of his employment was expected or likely to occur during the pendency of Debtor's bankruptcy case. The Court observes that Debtor met with bankruptcy counsel, purchased the Camaro and completed his credit counseling course as a prerequisite to filing bankruptcy all within the month of August, and that the credit counseling course was taken only five days after the Camaro was purchased. Thus, it appears more probable than not that the Camaro was purchased in contemplation of bankruptcy. Debtor made no payments on the Camaro prior to filing bankruptcy. "[W]hile not conclusive evidence of bad faith by itself, a debtor's purchase of a vehicle followed immediately by a bankruptcy filing can

---

[2]  The Deans factors include: 1) the percentage of proposed repayment to creditors, 2) the debtor's financial situation, 2) the period of time over which creditors will receive payment, 4) debtor's employment history and future prospects, 5) the nature and amount of unsecured claims, 6) debtor's past bankruptcy filings, 7) debtor's honesty in representing facts, and 8) any unusual or exceptional problems facing the particular debtor.

be evidence of bad faith...." In re Melton, C/A No. 10-05297, 2010 WL 5128631 (Bankr. D.S.C. Dec. 9, 2010). However, Debtor's other circumstances must be examined. Id.

Despite having more than $53,000 of credit card debt, Debtor also purchased a diamond engagement ring for $10,245.21 only two months prior to filing for bankruptcy relief. The proof of claim filed by Sterling indicates that Debtor made a large payment in the amount of $2,050.00 eight days before he took his credit counseling course in order to file bankruptcy. Debtor also failed to disclose personal tools with a combined value of $535.00. This Court previously stated in In re Simpson that:

> The Bankruptcy Code provides that Debtors' foremost responsibility is to cooperate with the Court and the Trustee and to facilitate the accurate and proper performance of their duties. Since bankruptcy schedules and statements are carefully designed to elicit certain information necessary for the proper administration of cases, Debtors' have a duty to complete these documents thoughtfully and thoroughly. Furthermore, accuracy, honesty, and full disclosure are critical to the functioning of bankruptcy and are inherent in the bargain for a debtor's discharge. Therefore, debtors are responsible for disclosing an accurate and complete schedule of assets with proper values and a truthful statement of affairs in order to convey a complete and accurate portrayal of their financial situation. Furthermore, there is no allowance for selectivity in asset disclosure.

In re Simpson, 306 B.R. 793, 797-98 (Bankr. D.S.C. 2003) (internal citations omitted). Debtor's offer to surrender the Camaro at the eleventh hour is insufficient to overcome the evidence indicating his lack of good faith in proposing this plan. See In re Williams, 475 B.R. 489 (Bankr. E.D. Va. 2012) (finding that a "no harm, no foul" rule encourages debtors to take the risk of improper conduct).

Considering the totality of the circumstances, the Court finds that Debtor has failed to demonstrate that his plan was proposed in good faith. Accordingly, confirmation is denied.

**AND IT IS SO ORDERED.**

_/s/ John E. Waites_
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
January 17, 2013